OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Appellant Terry Brill appeals the decision of the Carroll County Court of Common Pleas, Juvenile Division, finding him in contempt of his child support order and sentencing him to thirty days in jail. However, we conclude that Brill has already voluntarily served his sentence as he did not appeal the trial court's entry finding him in contempt and removing the opportunity to purge, nor did he file a motion to stay execution of his sentence with this court. Thus, we dismiss this appeal as moot.
 {¶ 2} On March 9, 2005, the Carroll County Child Support Enforcement Agency filed a Motion in Contempt claiming that Brill had failed to comply with an administrative order issued by the Carroll County Child Enforcement agency. More specifically, he was charged with failing to make his full monthly payments of $240 per month, failing to provide proof of medical insurance, and failing to appear at the Bureau of Support for an Office Review Hearing. Attached to the motion was a Notice of Hearing directing Brill to appear before the court on April 21, 2005.
 {¶ 3} The trial court sent an additional notice setting a show cause hearing for April 21, 2005. The notice stated that the court could impose penalties of increasing severity for the first offense, second offense, and third offense. Notably, the court could impose for a first offense a fine of not more than $250.00, a definite term of imprisonment of not more than 30 days in jail or both. A hearing was conducted on the matter.
 {¶ 4} At the hearing, Brill's attorney explained to the court that Brill was suffering from Crohn's disease and was unable to work except for odd jobs. Brill was going to process a claim for disability based upon the disease. He testified that he was not totally disabled by the disease but was barely supporting himself at the time. He explained that the condition changes based on changes of stress level and diet. In response to Brill's explanation of his disease, the following exchange occurred:
 {¶ 5} Court: "You know he could have submitted that information to the Child Support Enforcement Agency a long time ago and probably kept them abreast of whatever applications were pending. But when you ignore any correspondence that comes from the Bureau then you do so at your own risk Mr. Brill."
 {¶ 6} Attorney: "Would the court consider giving him a month to see if he makes any progress on the claim?
 {¶ 7} Court: "I'm not interested in progress on the claim. I (sic) interested in payment toward child support."
 {¶ 8} Attorney: "I understand."
 {¶ 9} Court: "It will be my finding, indeed, that Mr. Brill is in contempt of court for having failed to make any payments. And inasmuch as he claims an excuse, not providing that information to the Child Support Enforcement Agency. Now, he's made all kinds of allegations about the child's mother in trying to secure all kinds of reviews involving this particular case; but he's shown no interest in supporting the children. Now that speaks pretty strongly of his commitment. It will be my sentence today that you will serve thirty days in the Carroll County Jail, Mr. Brill. I'm not sure what the occupancy is now, so I'll give you thirty days to get your house in order. But you be prepared on May 21 to begin serving your jail time. Is that clear?"
 {¶ 10} Mr. Brill: "Yes, sir."
 {¶ 11} Attorney: "If he should get some positive word on his disability claim, just give that to the support bureau?"
 {¶ 12} Court: Uh-huh or money."
 {¶ 13} Attorney: "Okay."
 {¶ 14} Mr. Wells: "We will also need medical verification from his doctor that he says he is unable to work."
 {¶ 15} Attorney: "You understand that?"
 {¶ 16} Mr. Brill: "Uh-huh."
 {¶ 17} Attorney: "Do that."
 {¶ 18} Court: "And any time you don't make the full payment, you need to be down at the bureau talking to them and making suitable arrangements for some alternative. Don't ignore it. Because when you ignore it, you leave me little choice in terms of consequence. Very well. You better go home and mark May 21 on your calendar, Mr. Brill. Don't let it pass."
 {¶ 19} Brill was found in contempt of court. On April 26, 2005, a judgment entry was filed by the court finding Brill guilty and sentencing him to 30 days in the county jail. However, the last sentence of the entry explains that the jail sentence would be suspended if Brill complied with the Bureau of Support thus affording Brill an opportunity to purge.
 {¶ 20} On May 21, 2005, Brill began his sentence and completed it upon 30 days. On May 26, 2005 his attorney filed both a stay of execution with the trial court, which was denied, and an appeal with this court. Brill did not attempt to seek a stay of execution from this court pursuant to our Local Rule 1(B) or App. R.7.
 {¶ 21} Notably, the judgment entry denying the stay of execution once again explains that Brill was given the opportunity to purge his contempt by providing the Bureau a doctor's verification that Brill was unable to work due to his physical condition and to bring himself into compliance with the Bureau. The court concluded that Brill had failed to comply. Consequently, it was ordering him to serve his 30 day sentence at the county jail.
 {¶ 22} Although it is from the April 26, 2005 judgment entry that Brill now appeals, the actual final appealable order was the May 26, 2005 entry stating that Brill had failed to purge and would now be ordered to serve his sentence. The law is clear: a contempt citation is not a final appealable order if it only imposes a conditional punishment coupled with an opportunity to purge the contempt. Board of Trustees of Concord Twp. V.Baumgardner, 11th Dist. No. 2002-G-2430, 2003-Ohio-4361, ¶ 12. Until the opportunity to purge has been removed, there is no final appealable order." Davis v. Davis (Aug. 20, 2004), 11th Dist. No. 2004-G-2572 at ¶ 6.
 {¶ 23} Although it would appear that Brill has filed a premature notice of appeal under the Davis holding, pursuant to App.R. 4(C), we will treat Brill's notice of appeal as having been filed immediately after the issuance of the May 26, 2005 judgment. See Buoscio v. Macejko (Feb. 14, 2003), 7th Dist. No. 00-CA-00138. We will next proceed to address Brill's sole assignment of error which states:
 {¶ 24} "Whether the trial court did err and prejudice Appellant by ordering him to appear at Carroll County Jail on May 21, 2005 without scheduling a second hearing to determine whether or not he had complied with orders of the court issued in the contempt findings of April 21, 2005."
 {¶ 25} As a preliminary matter, we must determine whether this case is in fact moot. The State of Ohio argues that since Brill has served his 30 days in jail, an argument that they support with an affidavit signed by the sheriff who was in charge of administering the jail sentence, that Brill's argument is now moot. However, the law regarding mootness appears to differ slightly in a civil versus criminal context. Thus, we must first examine whether Brill's jail sentence was a result of civil or criminal contempt.
 {¶ 26} Contempt proceedings can be described as primarily either civil or criminal, although the proceedings themselves are sui generis. Brown v. Executive 200 (1980), 64 Ohio St.2d 250,253. Civil and criminal contempt proceedings can be distinguished by the purpose and character of the punishment meted out.Carroll v. Detty (1996), 113 Ohio App.3d 708, 711. In civil contempt, the purpose of the punishment is to coerce the contemnor to obey a judicial order for the benefit of a third party. Id. In civil contempt, the, "contemnor is said to carry the keys of his prison in his own pocket [citation omitted] * * * since he will be freed if he agrees to do as ordered." Pugh v.Pugh (1984), 15 Ohio St.3d 136, 139, quoting Brown v.Executive 200, Inc., 253. Because civil contempt sanctions are only conditional sanctions, a civil contempt conviction must provide a means for the contemnor to purge his contempt. Statev. Kilbane (1980), 61 Ohio St.2d 201, 206-207; Carroll at 712. To find civil contempt, a trial court needs only to do so by clear and convincing evidence. Carroll at 711.
 {¶ 27} On the other hand, criminal contempt sentences, "* * * are punitive in nature and are designed to vindicate the authority of the court [citations omitted]." Kilbane at 205. Criminal contempt sentences are also, "* * * usually characterized by an unconditional prison sentence." Brown at 254. A trial court must find proof of criminal contempt beyond a reasonable doubt. Schader v. Huff (1983), 8 Ohio App.3d 111,112.
 {¶ 28} In the present case, it is unclear whether the court imposed a sentence for civil contempt or criminal contempt. Failure to pay child support usually involves a finding of civil contempt. Carroll at 712. Moreover, contempt in the context of a hearing pursuant to R.C. § 2705.05 is essentially civil in nature. Brown at 253. However, despite the fact that Brill was given an opportunity to purge, when the time came for Brill to serve his sentence, the trial court stated in its judgment entry denying a stay of execution that Mr. Brill had failed to purge by communicating with the Bureau. Therefore, the court denied the motion to stay.
 {¶ 29} This action by the court could potentially mean two things. First, it could mean that Brill could be released from prison if he communicated with the Bureau while serving his sentence. Or, alternatively, it could mean that the trial court would be sending him to jail regardless of what actions Brill took in jail. In the first instance, the court would still be finding Brill guilty of civil contempt. And in the second instance, the court would be punishing Brill with no further opportunity to purge which arguably could be considered criminal contempt.
 {¶ 30} Regardless of which type of contempt was involved in this case, we conclude that Brill completed his jail sentence voluntarily as he never motioned the trial court to set a hearing regarding whether or not he purged, nor did he attempt to stay the execution of his sentence by motioning for relief from this court. For example, the Ohio Supreme Court has held, that "[w]here a defendant, convicted of a criminal offense, has voluntarily paid the fine or completed the sentence for that offense, an appeal is moot when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction." State v. Wilson (1975), 41 Ohio St.2d 236, syllabus.
 {¶ 31} Arguably, Brill could be prejudiced by the fact that each additional finding of contempt made by a court brings harsher and harsher penalties. However, the Ohio Supreme Court rejected this argument in State v. Berndt (Ohio 1987),29 Ohio St.3d 3, where the appellee argued that the existence of this conviction would enhance his penalty in the event he is again convicted of the same offense. The court responded that "this cannot fairly be described as a collateral disability within the meaning of Wilson, supra, since no such disability will exist if appellee remains within the confines of the law." Id. at 4-5.
 {¶ 32} Similarly, if this court determined that the contempt was civil in nature, courts generally will exercise jurisdictional restraint in cases that do not present actual controversies. Fortner v. Thomas (1970), 22 Ohio St.2d 13, 14. An appeal will be dismissed when, without the fault of any party, circumstances preclude the reviewing court from granting effective relief. James v. Keller, Inc. v. Flaherty (1991),74 Ohio App.3d 788, 791. An appellate court is not required to render an advisory opinion on a moot question or to rule on a question of law that cannot affect matters at issue in a case.Miner v. Witt (1910), 82 Ohio St. 237, 238.
 {¶ 33} Here, Brill is challenging the fact that he was ordered to report to jail without being given a second hearing to demonstrate that he had in fact purged himself of the contempt. However, since he has already reported to jail and served the entire sentence, there is nothing this court could do to provide relief to Brill on remand. Because this court cannot undo the fact that he has served his sentence, any decision regarding whether or not he was properly ordered to serve his jail sentence would be purely academic. Accordingly, this appeal is dismissed as moot.
Donofrio, P.J., concurs.
Vukovich, J., concurs.