OPINION
{¶ 1} Plaintiff, Emily Lopez, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, which terminated a shared-parenting decree and reallocated parental rights and responsibilities. Defendant, Robert Lopez, has filed a cross-appeal. For the following reasons, we affirm in part, reverse in part, and remand the matter to the trial court.
 {¶ 2} In March 2003, plaintiff and defendant were divorced and the parties were granted sharing parenting of their minor child, a daughter. Pursuant to the trial court's shared-parenting decree, plaintiff was designated the residential parent for school-lacement purposes.
 {¶ 3} On June 13, 2003, plaintiff filed a relocation notice with the trial court. Approximately four days later, plaintiff, along with the parties' daughter, moved from Ohio to West Virginia, where her fiancé resided and where the parties' parents also resided. Prior to moving, plaintiff did not inform defendant of her intention to relocate the parties' daughter to West Virginia.
 {¶ 4} Thereafter, on June 18, 2003, upon defendant's motion, defendant was granted an ex parte restraining order that prevented plaintiff from permanently removing the parties' daughter from Franklin County. Plaintiff objected to the ex parte restraining order, requested a hearing, and voluntarily submitted to the trial court's jurisdiction.
 {¶ 5} On July 9, 2003, defendant moved to reallocate parental rights and responsibilities and, alternatively, defendant moved to terminate the shared-parenting decree. In August 2003, after defendant filed an ex parte temporary emergency custody motion, the trial court modified the shared-parenting decree, wherein, among other things, the trial court designated defendant as the residential parent for school-placement purposes. On November 10, 2003, plaintiff moved to reallocate parental rights and, alternatively, to terminate the shared-parenting decree.
 {¶ 6} In November 2003, the trial court held a hearing to consider the outstanding motions before it. On February 26, 2004, the trial court rendered a decision, wherein it granted in part defendant's motion for reallocation of parental rights, terminated the parties' shared-parenting plan, denied an outstanding contempt motion against plaintiff, and denied plaintiff's motion for reallocation of parental rights.
 {¶ 7} From the trial court's decision, plaintiff appealed. Because the trial court had not journalized findings of fact and conclusions of law, this court concluded that plaintiff's appeal was premature and sua sponte dismissed the appeal.[1]
 {¶ 8} On May 7, 2004, the trial court issued findings of fact and conclusions of law. Thereafter, plaintiff filed an "amended notice of appeal" and defendant filed a cross-appeal.
 {¶ 9} On appeal, plaintiff assigns the following errors:
I. The Trial Court abused its discretion and erred as a matter of law when it found, against the manifest weight of the evidence, that the child's relocation to West Virginia was a change in circumstance and found in favor of Defendant-Father when Defendant-Father did not meet his burden of proof.
II. The Trial Court abused its discretion when it determined a modification of custody was in the child's best interest without reviewing all the required factors.
III. The Trial Court abused its discretion when it terminated shared parenting between the parties based on geographic proximity and the fact that Mother had moved out-of-state.
IV. The Trial Court abused its discretion and erred as a matter of law when it modified custody without identifying any advantages to the child which would result from the modification.
V. The Trial Court abused its discretion and erred as a matter of law when it determined that a relocation to West Virginia was not in the best interest of the child. The question before the Trial Court was whether a relocation to Pickerington, Ohio, was in the child's best interest.
 {¶ 10} On cross-appeal, defendant assigns the following errors:
[1.] The trial court erred by ordering the mother to pay child support "according to the guidelines" without completing a worksheet and without ordering the mother to pay a specific amount per month.
[2.] The trial court erred by awarding the federal child tax exemption to the mother, where the evidence did not support the court's judgment, and the court's order contained no rationale supporting the judgment.
[3.] The trial court erred by failing to hold the mother in contempt of the trial court's prior orders, where the mother moved out of state without notice to the father, and where the mother deliberately and intentionally denied father parenting time in violation of the court's shared parenting plan.
 {¶ 11} In Miller v. Miller (1988), 37 Ohio St.3d 71, clarification denied (1989), 43 Ohio St.3d 710, the Supreme Court of Ohio instructed:
While App.R. 12 grants an appellate court the power to reverse trial court judgments and enter those judgments that the court should have rendered, * * * it is inappropriate in most cases for a court of appeals to independently weigh the evidence and grant a change in custody. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. * * * In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct.
Id. at 74.
 {¶ 12} The Miller court further instructed:
While a trial court's discretion in a custody modification proceeding is broad, it is not absolute, and must be guided by the language set forth in R.C. 3109.04. * * * In addition, the trial court's determination in a custody proceeding is, of course, subject to reversal upon a showing of an abuse of discretion. * * *
Id. See, also, Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157 (observing that in a domestic relations context "abuse of discretion" "`connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable'").
 {¶ 13} Furthermore, "[w]here an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus, corrected in Bechtol v. Bechtol (1990), 51 Ohio St.3d 701.
 {¶ 14} Accordingly, when reviewing the trial court's custody determination, our inquiry is guided by the presumption that the trial court's findings were indeed correct. Miller, at 74. Absent a showing of an abuse of discretion, the trial court's determination in this custody proceeding is not subject to reversal. Id. Furthermore, if the trial court's custody award is supported by a substantial amount of credible and competent evidence, the trial court's custody award will not be reversed as being against the manifest weight of the evidence. Bechtol,
at syllabus.
 {¶ 15} Because plaintiff's five assignments of error interrelate, we shall jointly address them.
 {¶ 16} Underlying plaintiff's first, fourth, and fifth assignments of error is a contention that the trial court's judgment failed to comport with the requirements of R.C. 3109.04(E)(1)(a),[2] pertaining to modification of a prior decree allocating parental rights and responsibilities.
 {¶ 17} R.C. 3109.04(E)(1)(a) provides:
The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies: * * *
 {¶ 18} Additionally, plaintiff relies upon Clark v. Smith (1998),130 Ohio App.3d 648, for the proposition that a trial court must determine three issues when determining whether custody modification is appropriate: "`(1) Has there been a change in circumstances? (2) Is this modification in the best interest of the child? (3) Will the harm that will result from the change be outweighed by the benefits that will result from the change?'" Id. at 653, quoting Thatcher v. Thatcher (Oct. 6, 1997), Mercer App. No. 10-9708, citing In re Kennedy (1994),94 Ohio App.3d 414.
 {¶ 19} For his part, defendant asserts plaintiff's reliance upon R.C.3109.04(E)(1)(a) is misplaced because, rather than modifying the shared-parenting decree, the trial court terminated the parties' shared-parenting agreement. Defendant therefore reasons that R.C.3109.04(E)(2)(c), pertaining to a trial court's termination of a prior shared-parenting decree, is the relevant statute that should be applied for purposes of appellate review.
 {¶ 20} R.C. 3109.04(E)(2) provides:
In addition to modification authorized under division (E)(1) of this section:
* * *
(c) The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parent or whenever it determines that shared parenting is not in the best interest of the children. The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(ii) or (iii) of this section if it determines, upon its own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children. If modification of the terms of the plan for shared parenting approved by the court and incorporated by into the final shared parenting decree is attempted under division (E)(2)(a) of this section and the court rejects the modifications, it may terminate the final shared parenting decree if it determines that shared parenting is not in the best interest of the children.
 {¶ 21} Here, by terminating the parties' shared-parenting decree, the trial court arguably also modified the shared-parenting decree because it made a basic or fundamental change to the parties' shared-parenting agreement.[3] Therefore, a plausible argument can be made that R.C.3109.04(E)(1)(a), as well as R.C. 3109.04(E)(2), should be implicated for purposes of appellate review.
 {¶ 22} Indeed, the Third District Court of Appeals has determined that R.C. 3109.04(E)(2)(c) is subordinate to R.C. 3109.04(E)(1)(a) when reviewing a termination of a shared-parenting decree. Stout v. Stout
(Oct. 17, 2001), Union App. No. 14-01-10; Inbody v. Inbody (June 5, 1995), Hancock App. No. 5-94-37.
 {¶ 23} Other appellate districts have found differently. Goetze v.Goetze (Mar. 27, 1998), Montgomery App. No. 16491; Deimling v. Messer
(Mar. 16, 1998), Clermont App. No. CA97-07-070; Quesenberry v.Quesenberry (Nov. 6, 1998), Champaign App. No. 98 CA 1; Brannon v.Brannon (June 27, 1997), Trumbull App. No. 96-T-5572; Dobran v. Dobran
(Sept. 1, 1999), Mahoning App. No. 97 CA 166.
 {¶ 24} In Dobran, supra, the Seventh District Court of Appeals reasoned:
* * * The clear wording of the applicable statutes reveals that different standards have been established for the termination as compared to the modification of a shared parenting plan. R.C. 3109.04(E)(1)(a) only addresses those occasions when a modification is sought in the existing shared parenting plan. Notably absent from this section are any references to the complete termination of the plan. As such, this section would be applied when the parties sought to modify provisions of the plan as to the days of the week the children would spend with each parent, what school the children would attend, etc.
R.C. 3109.04(E)(2)(c) on the other hand, applies solely to instances where an outright termination of the plan is being requested. Under this section, no mention of a change of circumstances is made. The standard which the court must look to and apply is that of the best interest of the children involved. The legislature made it clear from the language utilized in this section that termination and the best interest standard were available "[i]n addition to a modification authorized under division (E)(1) of this section." Therefore, the provisions for termination must be viewed as existing independently of those provided for modification.
See, also, Myers v. Myers, 153 Ohio App.3d 243, 2003-Ohio-3552, at ¶ 34 (observing that "[a]lthough R.C. 3109.04(E)(1) requires a finding of a change in circumstances before allowing a court to modify a prior custody decree, R.C. 3109.04(E)(2) provides a number of independent bases for modifying or terminating a shared-parenting agreement that do not require a finding of change in circumstances").
 {¶ 25} We agree with Dobran's reasoning that, based upon the plain statutory language of R.C. 3109.04(E), the provisions for modification and termination of parental rights and responsibilities should be viewed as existing independently.
 {¶ 26} Here, based upon the parties' motions in the alternative, rather than modifying the parties' shared-parenting decree, the trial court terminated the prior shared-parenting decree. Because the trial court terminated the prior shared-parenting decree, we therefore conclude that R.C. 3109.04(E)(2)(c), not 3109.04(E)(1)(a), is the relevant statutory provision for purposes of appellate review. Moreover, we findClark, supra, is distinguishable as that case pertained to a modification of custody, not termination of a shared-parenting decree, which is at issue here.
 {¶ 27} Pursuant to R.C. 3109.04(E)(2)(c), the relevant inquiry upon appellate review is whether the trial court abused its discretion when it determined that shared parenting was no longer in the best interest of the parties' child.
 {¶ 28} R.C. 3109.04(F)(1) provides factors for a court to consider when determining the best interest of a child. According to R.C.3109.04(F)(1):
In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of the children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
(a) The wishes of the children's parents regarding the child's care;
(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
(d) The child's adjustment to the child's home, school, and community;
(e) The mental and physical health of all persons involved in the situation;
(f) The parent more likely to honor and facilitate courtapproved parenting time rights or visitation and companionship rights;
(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
 {¶ 29} Additionally, R.C. 3109.04(F)(2) provides factors for a court to consider when determining whether shared parenting is in a child's best interest. Pursuant to R.C. 3109.04(F)(2):
In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:
(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
(e) The recommendations of the guardian ad litem of the child, if the child has a guardian ad litem.
See, also, R.C. 3119.23 (factors for deviating from the basic child-support schedule).
 {¶ 30} Here, unlike the divorce proceedings, the trial court did not interview the parties' child in chambers to discuss the child's wishes and concerns as to the reallocation of parental rights and responsibilities. In its findings of fact, the trial court found that both parties "are loving and responsible individuals devoted to their child"[4] and the significant others with whom the parties had become involved "are just as loving and dedicated to the best interest of [the parties' child] as are the parties."[5] The trial court further found that "[t]he child's interaction with parents * * * extended family and others is by accounts excellent."[6] Additionally, the trial court found that "[t]he child's adjustment to community, home and school in both places appears to be equal under the circumstances."[7]
 {¶ 31} The trial court also found that there was no indication of abuse or potential for abuse, the mental and physical health of all involved persons were not of significant concern, neither parent willingly denied the other parent visitation, and neither party failed to provide adequate support or had been convicted of any offense set forth in R.C. 3109.04(F)(1)(h).[8]
 {¶ 32} The trial court did find, however, that "[t]he relocation would significantly alter the parties [sic] shared parenting plan with regard to dates and times the Defendant would be able to be with [the parties' child]. * * * The relocation makes mid-week visitation unreasonable. The geography of the situation makes travel time significant for both parents and [the parties' child]"[9] and "[t]he geographic proximity of the parties is not conducive to a shared parenting plan."[10]
 {¶ 33} The trial court further found that "given the nature of the actions of these parties the Defendant is more likely to support the involvement of the Plaintiff than the Plaintiff to support the involvement of the Defendant"[11] and "[f]rom a review of all the testimony, the exhibits and the arguments of counsel it appears that the Defendant is more likely to facilitate visitation and companionship with [the parties' child] than the Plaintiff."[12]
 {¶ 34} Additionally, the trial court concluded that the relocation of the parties' child to West Virginia constituted a "change of circumstance."[13] However, this finding of a change in circumstance was unnecessary because termination of a shared-parenting decree pursuant to R.C. 3109.04(E)(2)(c) only requires that the trial court consider the best interest of the child in determining custody. Deimling, supra;Quesenberry, supra.
 {¶ 35} The trial court therefore concluded that under the facts and circumstances of the case, a shared-parenting plan was not in the best interest of the parties' minor child. Accordingly, the trial court dissolved the shared-parenting plan and designated defendant as the residential parent and legal custodian.
 {¶ 36} Notwithstanding the trial court's findings and conclusions, plaintiff asserts the trial court committed reversible error because it failed to completely address factors enumerated in R.C. 3119.23, which concerns deviation from the basic child-support schedule. See R.C.3109.04(F)(2). Although the trial court may not have expressly addressed all the factors enumerated in R.C. 3119.23, we cannot conclude that, under the facts and circumstances of this case, this omission implies that the court's attitude was unreasonable, arbitrary, or unconscionable or that the trial court's custody determination was not supported by a substantial amount of credible and competent evidence. See Winkler v.Winkler, Franklin App. No. 02AP-937, 2003-Ohio-2418, at ¶ 63; Bunten v.Bunten (1998), 126 Ohio App.3d 443, 447 (stating that "[a]lthough the trial court is instructed to consider all relevant factors * * * when determining the best interests of the children, it is not necessary for the court to set forth its analysis as to each factor in its judgment entry, so long as the judgment entry is supported by some competent, credible evidence").
 {¶ 37} Accordingly, plaintiff's contention that the trial court committed reversible error because it failed to it failed to completely address factors enumerated in R.C. 3119.23 is unconvincing.
 {¶ 38} Plaintiff also asserts that the trial court abused its discretion when it terminated the shared-parenting decree based upon geographic proximity and based upon plaintiff's relocation to West Virginia. R.C. 3109.04(F)(2)(d) provides that "[t]he geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting" is a relevant factor in determining whether shared-parenting is in the best interest of the child. Here, geographic proximity was one factor that the trial court considered when it found shared parenting was not in the best interest of the parties' child; however, geographic proximity was not the sole basis of the trial court's determination. Furthermore, the trial court properly could consider the circumstances of plaintiff's relocation to West Virginia in its custody determination. See Eichenberger v. Eichenberger (Oct. 24, 1995), Franklin App. No. 95APF04-456, appeal not allowed (1996),75 Ohio St.3d 1425 (observing that a parent's surreptitious relocation of a child is a fact for a court to consider in making a custody determination). Here, the trial court found that "[d]uring testimony the Plaintiff conceded that the manor [sic] and notice of relocation, while complying with the technical legal requirements, were not in the spirit of shared parenting. Plaintiff did not consult with the Defendant prior to her relocation for fear of court action by the Defendant."[14]
 {¶ 39} In sum, we find plaintiff's five assignments of error are unconvincing. Under the plain statutory language of R.C. 3109.04(E), the provisions for modification and termination of parental rights and responsibilities are properly viewed as existing independently. Here, the trial court terminated the parties' shared-parenting decree and, therefore, R.C. 3109.04(E)(2)(c), not 3109.04(E)(1)(a), is the relevant statutory basis for our consideration. Furthermore, guided by the presumption that the trial court's findings were correct and based upon our review of the record, we conclude that the trial court's termination of the parties' shared-parenting plan and the designation of defendant as the residential parent and legal custodian did not constitute an abuse of discretion and was not against the manifest weight of the evidence.
 {¶ 40} Accordingly, plaintiff's five assignments of error are overruled.
 {¶ 41} We next consider defendant's three assignments of error on cross-appeal.
 {¶ 42} Defendant's first assignment of error on cross-appeal asserts the trial court erred when it ordered plaintiff to pay child support "according to the guidelines" without completing a worksheet and without ordering plaintiff to pay a specific amount per month. Plaintiff contends defendant's first assignment of error on cross-appeal is moot because the trial court corrected its oversight through its filing of a "supplemental finding of fact and conclusions of law" that was filed subsequent to plaintiff's appeal and defendant's cross-appeal.
 {¶ 43} An appellate court reviews child-support matters under an abuse of discretion standard. Pauly v. Pauly (1997), 80 Ohio St.3d 386, 390, citing Booth v. Booth (1989), 44 Ohio St.3d 142, 144. "An abuse of discretion is more than an error of judgment but instead connotes a decision that is unreasonable, arbitrary, or unconscionable." Berthelotv. Berthelot, 154 Ohio App.3d 101, 2003-Ohio-4519, at ¶ 6, citingBlakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. "When applying the abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court." Berthelot, at ¶ 6, citing Berkv. Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 44} R.C. 3119.02 provides:
In any action in which a court child support order is issued or modified, in any other proceeding in which the court determines the amount of child support that will be ordered to be paid pursuant to a child support order, * * * the court * * * shall calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of section 3119.02 to 3119.24 of the Revised Code. The court * * * shall specify the support obligation as a monthly amount due and shall order the support obligation to be paid in periodic increments as it determines to be in the best interest of the children. In performing its duties under this section, the court * * * is not required to accept any calculations in a worksheet prepared by any party to the action or proceeding.
 {¶ 45} Furthermore, in Marker v. Grimm (1992), 65 Ohio St.3d 139, construing R.C. 3113.25,[15] the Supreme Court of Ohio held:
1. A child support computation worksheet, required to be used by a trial court in calculating the amount of an obligor's child support obligation in accordance with R.C. 3113.215, must actually be completed and made a part of the trial court's record.
2. The terms of R.C. 3113.215 are mandatory in nature and must be followed literally and technically in all material respects.
Id. at paragraphs one and two of the syllabus.
 {¶ 46} Here, absent within the record is a child-support computation worksheet and calculation of plaintiff's monthly child-support obligation by the trial court. Accordingly, we conclude the trial court failed to comply with R.C. 3119.02 and Marker, supra.
 {¶ 47} Furthermore, plaintiff's contention of mootness is unconvincing. Here, the trial court's "supplemental finding of fact and conclusions of law" is absent from the record. "A reviewing court cannot add matter to the record before it, which was not part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." State v. Ishmail (1978), 54 Ohio St.2d 402, paragraph one of the syllabus. Because the trial court's "supplemental finding of fact and conclusions of law" is dehors the record, plaintiff's reliance upon the trial court's supplemental filing for purposes of this appeal is unavailing.
 {¶ 48} Accordingly, defendant's first assignment of error on cross-appeal is sustained.
 {¶ 49} Defendant's second assignment of error on cross-appeal asserts the trial court erred by awarding the federal child tax exemption to plaintiff because the evidence does not support the trial court's determination and there is no supporting rationale for the trial court's determination.
 {¶ 50} Ohio law provides the manner in which a state court may allocate a dependent child exemption for income tax purposes. Will v.Will (1996), 113 Ohio App.3d 8, 11. "A trial court enjoys broad discretion when allocating tax dependency exemptions, and absent a showing of an abuse of discretion, an appellate court may not substitute its judgment for that of the trial court." Geschke v. Geschke, Medina App. No. 3266-M, 2002-Ohio-5426, at ¶ 32, citing Morgan v. Morgan (Oct. 24, 2001), Wayne App. No. 01CA0017; Deckerd v. Deckerd (Dec. 18, 1996), Columbiana App. No. 95-CO-33.[16] "An abuse of discretion is more than an error of judgment but instead connotes a decision that is unreasonable, arbitrary, or unconscionable." Berthelot, at ¶ 6, citingBlakemore, at 219. "A decision is unreasonable if there is no sound reasoning process that would support that decision." AAA Enterprises,Inc. v. River Place Community Redevelopment Corp. (1990),50 Ohio St.3d 157, 161.
 {¶ 51} R.C. 3119.82, in relevant part, provides:
Whenever a court issues, or whenever it modifies, reviews, or otherwise reconsiders a court child support order, it shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes as set forth in section 151 of the "Internal Revenue Code of 1986," 100 Stat. 2085,26 U.S.C. 1, as amended. * * * If the parties do not agree, the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children and, with respect to orders the court modifies, reviews, or reconsiders, the payments for child support are substantially current as ordered by the court for the year in which the children will be claimed as dependents. In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.
 {¶ 52} Here, without stating the basis for its determination, the trial court designated plaintiff, the nonresidential parent, as the parent who could claim the parties' minor daughter as a dependent for federal income tax purposes. Pursuant to R.C. 3119.82, the trial court "may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children and, with respect to orders the court modifies, reviews, or reconsiders, the payments for child support are substantially current as ordered by the court for the year in which the children will be claimed as dependents." (Emphasis added.)
 {¶ 53} Absent a determination that the designation of plaintiff as the parent who could claim the parties' minor daughter as a dependent for federal income tax purposes was in the best interest of the parties' child, we conclude that the trial court's determination did not comport with the requirements of R.C. 3119.82. Furthermore, because the trial court's determination failed to include any reasoning process to support its decision to award the federal dependent child exemption to plaintiff, we also conclude that the trial court abused its discretion. See AAA Enterprises, Inc., at 161; R.C. 3119.82 (requiring a court in making its determination to consider "any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children").
 {¶ 54} Accordingly, for the foregoing reasons, we sustain defendant's second assignment of error on cross-appeal.
 {¶ 55} Defendant's third assignment of error on cross-appeal asserts the trial court erred by not finding plaintiff in contempt of court.
 {¶ 56} "Contempt is a disregard of, or disobedience to, an order or command of judicial authority." Carroll v. Detty (1996),113 Ohio App.3d 708, 711, citing State v. Flinn (1982),7 Ohio App.3d 294. Contempt may be categorized as civil or criminal.Carroll, at 711. Contempt may further be classified as direct or indirect. Id. at fn. 1. "Whether a contempt proceeding is criminal or civil depends on the character and purpose of the contempt sanction." Inre C.M., Summit App. No. 21720, 2004-Ohio-1984, at ¶ 9, citing Brown v.Executive 200, Inc. (1980), 64 Ohio St.2d 250, 253. Punishment for criminal contempt is punitive, not coercive. Carroll, at 711. Comparatively, punishment for civil contempt is for the benefit of the complainant and it is remedial or coercive in nature. Id. In a civil contempt action, the burden of proof is clear and convincing evidence. Id. "Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. Absent an abuse of discretion, an appellate court cannot reverse a finding of contempt by a trial court. Carroll, at 711; In reC.M., at ¶ 10.
 {¶ 57} Here, we conclude that the remedy sought by defendant's motion for contempt was for the benefit of defendant and remedial in nature, and thus akin to civil contempt. Therefore, the quantum of evidence required was clear and convincing evidence. Carroll, at 711.
 {¶ 58} In its findings of fact, the trial court found that "[w]hile the actions of the Plaintiff do not raise themselves to the level of contempt they do indicate a lack of commitment to keeping the Defendant involved with [the parties' daughter]."[17] Based upon our review of the record, we cannot conclude that the trial court acted unreasonably, arbitrarily, or unconscionably by not finding actionable contempt. Accordingly, defendant's third assignment of error on cross-appeal is unpersuasive.
 {¶ 59} Defendant's third assignment of error on cross-appeal is therefore overruled.
 {¶ 60} For the foregoing reasons, plaintiff's five assignments of error are overruled, defendant's third assignment of error on cross-appeal is overruled, and defendant's first and second assignments of error on cross-appeal are sustained. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
Brown, P.J., and Lazarus, J., concur.
[1] Lopez v. Lopez, Franklin App. No. 04AP-328 (Journal Entry of Dismissal), filed April 22, 2004.
[2] R.C. 3109.04 has been amended by Sub. S.B. No. 185. Sub. S.B. No. 185 was passed December 7, 2004, approved January 10, 2005, and has an effective date of April 11, 2005.
[3] See, generally, Merriam-Webster's Collegiate Dictionary (11 Ed. 2004) 798 (stating that a definition of "modify" is "to make basic or fundamental changes in often to give a new orientation to or to serve a new end").
[4] "Finding [sic] of Fact and Conclusions of Law," filed May 7, 2004, at 1.
[5] Id.
[6] Id. at 2.
[7] Id. at 3.
[8] Id.
[9] Id. at 2.
[10] Id. at 3.
[11] Id. at 2.
[12] Id. at 3.
[13] Id.
[14] "Finding [sic] of Fact and Conclusions of Law," filed May 7, 2004, at 2.
[15] R.C. 3113.215 was repealed effective March 22, 2001. R.C. 3119.02
is among the current provisions analogous to former R.C. 3113.215. See, generally, R.C. 3113.215, Baldwin's Ohio Revised Code Annotated (historical and statutory notes).
[16] In Geschke, the court cited Deckerd as having been rendered on December 18, 1999.
[17] "Finding [sic] of Fact and Conclusions of Law," filed May 7, 2004, at 3.